# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ASIM M. ALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 4:02-CV-517 CAS |
| v. | ) |
| | ) |
| THE ASSOCIATION OF AFRICAN- | ) |
| AMERICAN ROLE MODELS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' Combined Motion to Dismiss, for Summary Judgment, and to Strike. Plaintiff opposes the motion. For the following reasons, the Court concludes that it lacks subject matter jurisdiction over plaintiff's federal claims, and will decline to exercise supplemental jurisdiction over the state law claims.

**Background**.

Plaintiff Asim Ali, formerly known as C. Gregory Favell, filed this action asserting claims of race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII") (Counts I and II) and the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010 et seq. ("MHRA") (Counts III and IV). Plaintiff also asserts supplemental state law claims for wrongful discharge in violation of public policy (Counts V and VI), breach of contract (Count VII), unjust enrichment (Count VIII), breach of fiduciary duty (Count IX), and defamation/slander (Count X). The defendants are plaintiff's former employer, the Association of African-American Role Models ("AAARM"), a not-for-profit corporation with its principal place of

business in St. Louis County, Missouri, and Ajuma K. Muhammad, the executive director of AAARM.[1]

Plaintiff asserts AAARM provides tutoring, mentoring, counseling and other services to disadvantaged youths in the St. Louis area. Plaintiff was employed by AAARM as a case manager responsible for various administrative and training functions. Plaintiff asserts that he was responsible for developing and implementing AAARM's transitional living program, in which AAARM sought state certification to operate residential youth group homes. In order to obtain this certification, AAARM was required to provide its direct-care employees with training in crisis management and physical restraint. AAARM asked plaintiff, a state-certified instructor in crisis management and physical restraint, to provide the necessary training to its direct-care employees. Plaintiff asserts that when he was unable to complete the necessary training through no fault of his own, defendant Muhammad asked him to falsely certify that training was complete so that AAARM would obtain its desired state license. Plaintiff refused, and was discharged shortly thereafter because of his refusal to make the false certification. Plaintiff also asserts that AAARM discharged him so that it could replace him with a white female, who AAARM believed would be better able to work with the State of Missouri in obtaining the necessary license for AAARM to become a residential care agency. Plaintiff was told, however, that he was being discharged because he embezzled a company check belonging to AAARM, which plaintiff asserts is patently false. See Complaint, ¶¶ 7-19.

Defendants move for dismissal or summary judgment on all of plaintiff's claims. First, defendants move to dismiss plaintiff's federal claims in Counts I and II on the basis that AAARM is

---

[1] By order dated July 23, 2002, the Court dismissed plaintiff's claims against Joyce Mischeaux for failure to comply with Rule 4(m) of the Federal Rules of Civil Procedure. Plaintiff subsequently filed a Second Amended Complaint which omitted Mischeaux as a defendant.

not an "employer" within the meaning of Title VII because it did not have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). Defendants also move for summary judgment on plaintiff's claims under Title VII and the MHRA (Counts I-IV) asserting that plaintiff was an independent contractor not entitled to protection under those statutes.[2]

**Legal Standard**.

Defendants do not specify whether they move to dismiss plaintiff's Title VII claims for failure to state a claim or for lack of subject matter jurisdiction. If the issue before a court is whether the plaintiff has failed to satisfy a threshold jurisdictional requirement, the Rule 12(b)(1) approach is appropriately applied. Trimble v. Asarco, Inc., 232 F.3d 946, 954 n.9 (8th Cir. 2000); see, e.g., Missouri v. Western Sur. Co., 51 F.3d 170, 173 (8th Cir. 1995) (applying Rule 12(b)(1) analysis to jurisdiction amount-in-controversy requirement); Osborne v. United States, 918 F.2d 724, 728-30 (8th Cir. 1990) (noting that compliance with the statute of limitations is a jurisdictional prerequisite to suit under the Federal Tort Claims Act and applying Rule 12(b)(1) standards to plaintiff's burden to prove the jurisdictional requirement).

Under established Eighth Circuit precedent, Title VII's fifteen-employee minimum is a jurisdictional prerequisite. See Daggitt v. United Food and Commercial Workers Int'l Union, Local 304A, 245 F.3d 981, 989 (8th Cir. 2001); Devine v. Stone, Leyton & Gershman, P.C., 100 F.3d 78,

---

[2]Defendants also move to dismiss plaintiff's claims against Muhammad under Title VII and the MHRA, but it is clear from the prayers for relief in Counts I through IV of the Second Amended Complaint that plaintiff asserts his employment discrimination claims only against defendant AAARM.

80 (8th Cir. 1996). Thus, defendants' motion to dismiss Counts I and II should be construed as a motion to dismiss for lack of subject matter jurisdiction.

"In order to properly dismiss [an action] for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citing Osborn, 918 F.2d at 729 n. 6). Distinguishing between a facial and a factual challenge is critical to determining how the Court should proceed when resolving a motion to dismiss for lack of subject matter jurisdiction. Under a facial challenge to jurisdiction all of the factual allegations in the plaintiff's complaint are presumed to be true, while under a factual challenge no presumptive truthfulness attaches. See Titus at 593 & n.1. Further, under a factual challenge the district court is afforded the unique power to make factual findings which are decisive of its jurisdiction. Godfrey v. Pulitzer Publ'g Co., 161 F.3d 1137, 1140 (8th Cir. 1998), cert. denied, 119 S. Ct. 1575 (1999); Osborn, 918 F.2d at 729. The Eighth Circuit has stated:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction--its very power to hear the case--there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

Titus, 4 F.3d at 593 n.1 (quoted case omitted). Consequently, the Court is not limited to an inquiry into undisputed facts, but may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction. See Godfrey, 161 F.3d at (8th Cir. 1998).

In this case, defendants make a factual challenge to plaintiff's complaint, submitting declarations made under penalty of perjury and numerous exhibits in support of their motion. Plaintiff has responded with a declaration made under penalty of perjury and multiple exhibits.

Because the Court is engaging in fact finding, the declarations under penalty of perjury must comply with Federal Rule of Procedure 56(e), which provides that "supporting or opposing affidavits

shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). "[A]ffidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." El Deeb v. University of Minn., 60 F.3d 423, 428 (8th Cir. 1995). "Statements in an affidavit which are not based on personal knowledge and which are 'unaccompanied by facts which would be admissible in evidence' are properly disregarded by a court as insufficient to raise a genuine issue of fact." Cameron v. Mid-Continent Livestock Supplements, Inc., 211 F.Supp.2d 1120, 1125 (E.D. Mo. 2002) (quoting Neff v. World Publishing Co., 349 F.2d 235, 254 (8th Cir. 1965)). In addition, "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Rule 56(e).

**Discussion**.

    **A. Title VII Claims**.

Because Title VII's fifteen-employee minimum is a "jurisdictional prerequisite, the burden is on plaintiff to allege and, if necessary, prove evidence to positively establish the court's subject matter jurisdiction." Cameron, 211 F.Supp.2d at 1125 (citing FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990)); see also Devine, 100 F.3d at 82.

Under Title VII, the term "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]" 42 U.S.C. § 2000e(b). The parties agree that because plaintiff asserts the discriminatory act took place in 2002 when he was terminated from employment, the relevant years of inquiry under the statute are 2001 and 2002. See Walters v. Metropolitan Educ. Enters., Inc., 519 U.S. 202, 205 n. (1997).

5

The United States Supreme Court has sanctioned the "payroll" method for counting employees under Title VII. Walters, 519 U.S. at 207. Under this method, the inquiry is whether an individual is on the employer's payroll for a particular day in question. "[O]n any particular day, all of the individuals with whom an employer has an employment relationship are 'employees' of that employer." Id. at 206. "Thus, individuals who are not receiving compensation from their employer on the day in question nonetheless qualify as 'employees' on that day for purposes of § 2000e(b)'s definition of 'employer.'" Id. Under the payroll method, an individual is counted as an employee for all working days between the starting date and ending date of his employment. Id. at 211. "An individual counts toward the calendar week and the fifteen-employee minimum only if that employee is on the payroll for every working day in a calendar week; employees who start or end in the middle of a week do not count toward the minimum for that particular week." Cameron, 211 F.Supp.2d at 1125 (citing Walters, 519 U.S. at 209)). "[T]he ultimate touchstone under § 2000e(b) is whether an employer has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question." Walters, 519 U.S. at 212.

The evidence submitted by defendants in support of their motion shows that defendant did not employ fifteen or more employees for at least twenty calendar weeks in either 2001 or 2002. Defendants have submitted the Declaration of Joyce Mischeaux (Defs.' Ex. B), which states in part that attached to the Declaration are spreadsheets showing the number of AAARMS' employees employed each week of 2001 and 2002 (Defs.' Exs. C, D), compiled from Mischeaux's records of the work performed by each of AAARM's employees during the two years. Exhibit C shows that AAARM did not have any weeks with fifteen or more employees on payroll in 2001, and Exhibit D

shows that AAARM had only two weeks with fifteen or more employees on payroll in 2002.[3]  Also attached to the Mischeaux Declaration are weekly calendar pages from 2001 and 2002 with employee names written on each date, which appear to be Mischeaux's records referred to in the Declaration.

In opposition to defendants' motion, plaintiff argues that a genuine dispute of material fact exists because he has personal knowledge that AAARM had more than fifteen employees in 2001 and 2002.  Plaintiff states in his Declaration that he was in charge of payroll at AAARM's first group home, and was second in command at AAARM to defendant Muhammad.  Ali Decl., ¶ 2.  Plaintiff states, "To the best of my knowledge, information and belief, AAARM employed fifteen or more employees throughout the entire Calendar year 2001."  Id., ¶ 4.  Plaintiff states that AAARM listed "certain individuals as 'volunteers' when they were really employees, including Sam Muhammad, Earnest Muhammed, and Beatrice Hudson," and that these individuals were paid with non-payroll checks and cash so they would not be identified in payroll records.  Id.  Plaintiff states that these individuals were "employees in every sense of the word."  Id.  Plaintiff also states that other individuals who were employees of AAARM in 2001 included Ray Wilson, Bernadine Thomas, Mary Jean Thomas, Cheryl Christian, Corey Goodman, a.k.a. Sultan Muhammad (not the same individual as the Sultan Muhammad listed on AAARM's exhibit), Joyce Favell, Mr. Hester, Jessie Hatcher, Amir Ali, Russel Houston, Abdulah Ali, Mike Williams, Joe Scoggins and Stacy Muhammad.

Plaintiff also declares, "To the best of my knowledge, information and belief, AAARM employed fifteen or more employees throughout the entire Calendar year 2002 as well."  Ali Decl., ¶ 5.  Plaintiff states that he was terminated from employment on January 7, 2002, but because of his

---

[3]The method by which Exhibits C and D were compiled is discussed infra.

position he was personally aware of all employees AAARM employed at the beginning of 2002, and "it is [his] belief that AAARM maintained more than 15 employees during Calendar year 2002 as well as 2001." Id.

Defendants respond with a second Declaration of defendant Muhammad (Ex. R to Defs.' Reply Mem.), which states that (1) AAARM's employment of Ray Wilson, Bernadine Thomas and Mary Jean Thomas ended prior to 2001; (2) Cheryl Christian is an outside consultant who has never been employed by AAARM; (3) Cory Goodman, Russell Houston,[4] Mike Williams and Stacy Muhammad have never been employed by AAARM; (4) AAARM did not employ Joyce Favell until after 2002;[5] (5) AAARM did not employ Amir Ali until after 2001;[6] (6) Abdulah Ali is a contract therapist who has never been employed by AAARM; (7) Joe Scoggins is a volunteer member of AAARM's Board of Directors who has never been employed by AAARM; and (8) Ernest Muhammad was either a contract therapist or a volunteer, but was not employed by AAARM during 2001 or 2002. Defendants state in their reply memorandum that spreadsheet Exhibit C shows Jessie Hatcher was an AAARM employee in 2001. The Court notes that Ernest Muhammed,[7] Sam

---

[4]Defendant Muhammad uses a different spelling for Corey Goodman and Russel Houston's names than does plaintiff, but there is no indication that plaintiff and Muhammad are referring to different individuals.

[5]The Court notes that a Joyce Favell appears on Exhibit D as an AAARM employee in 2002.

[6]An individual named "Ameer Ali" appears on AAARM's 2002 spreadsheet, Ex. D, but it is not clear whether this is the same individual as the Amir Ali referred to by both plaintiff and defendant Muhammad.

[7]It is not entirely clear whether the "Earnest Muhammed" referred to in plaintiff's Declaration is the same individual as the "Ernest Muhammad" referred to in defendant Muhammad's second Declaration. The Court also notes that an individual named Ernest Muhammed appears as an AAARM employee in both 2001 and 2002 on Exhibits C and D.

8

Muhammed and Beatrice Hudson also appear on Defendants' Exhibit C as AAARM employees in 2001, and William Hester appears on Defendants' Exhibit D as an AAARM employee in 2002.

The primary evidence presented by plaintiff in support of his argument is his Declaration. The Declaration states in general terms that plaintiff knows AAARM employed fifteen or more employees in 2001 based on personal knowledge gained from his employment responsibilities. Plaintiff's contention that three individuals, Sam Muhammed, Earnest Muhammed and Beatrice Hudson, were listed by AAARM as volunteers but were actually employees is contradicted by defendants' Exhibit C, which shows that Sam Muhammed, Beatrice Hudson, and possibly Earnest Muhammed were on AAARM's payroll in 2001. For the other specific individuals plaintiff has named, defendants have countered with evidence that those individuals were either never employed by AAARM, were employed prior to 2001, or are already accounted for as AAARM employees in the spreadsheets, Exhibits C and D.

As discussed more fully below, although plaintiff criticizes the method by which defendants prepared the spreadsheets, plaintiff does not provide any evidence concerning when the individuals were allegedly employed by AAARM, or which weeks in 2001 AAARM had employment relationships with fifteen or more employees. See Walters, 519 U.S. at 206. Plaintiff's Declaration does not contain evidence the Court could use to apply the payroll test as set forth by the Supreme Court in Walters. Under the payroll method, an individual is counted as an employee for all working days between the starting date and ending date of his employment. Id. at 211. "An individual counts toward the calendar week and the fifteen-employee minimum only if that employee is on the payroll for every working day in a calendar week; employees who start or end in the middle of a week do not count toward the minimum for that particular week." Cameron, 211 F.Supp.2d at 1125 (citing

Walters, 519 U.S. at 209)). "[T]he ultimate touchstone under § 2000e(b) is whether an employer has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question." Walters, 519 U.S. at 212. Plaintiff has provided none of this information, and therefore this aspect of his Declaration does not meet his burden to show that AAARM had fifteen or more employees in 2001 for each working day in at least twenty weeks of the year.

Plaintiff's Declaration provides even less evidence concerning the number of AAARM's employees in 2002. Plaintiff states that he was terminated in early January 2002, and attempts to extrapolate his knowledge of AAARM's employees at the beginning of the year through the entire year. This aspect of plaintiff's Declaration is a mere unsupported assertion, and as such, does not constitute evidence to meet plaintiff's burden to show the jurisdictional minimum number of employees exists for 2002.

As previously mentioned, plaintiff criticizes defendants' Exhibits C and D, the spreadsheets showing AAARM's employees in 2001 and 2002. Plaintiff asserts that the spreadsheets are "self serving" and were based on the faulty premise that an individual is only counted as an employee if he or she actually performed work in a given week. Pl.'s Mem. Opp. at 6. Plaintiff contends that anyone whose name appears on the spreadsheets should be counted as an employee with whom AAARM had an employment relationship in 2001 and 2002.

As a threshold matter, the spreadsheets are properly considered by the Court as evidence because they are authenticated by the Mischeaux Declaration, which describes how they were prepared, and describes and provides the underlying records from which they were prepared. See, e.g., Stuart v. General Motors Corp., 217 F.3d 621, 635 n.20 (8th Cir. 2000) ("To be considered on

10

summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Federal Rule of Civil Procedure 56(e).  Documents which do not meet those requirements cannot be considered.")

The Mischeaux Declaration states in pertinent part:

> 18.  Attached hereto as Exhibit [C]  is a true and correct spreadsheet showing the number of employees employed each week of 2001 by AAARM.  The spreadsheet was compiled from my records of the work performed by each employee of AAARM during that year.  A true and correct copy of such records are attached hereto as Exhibit  3.

> 19.  Attached hereto as Exhibit [D] is a true and correct spreadsheet showing the number of employees employed each week of 2002 by AAARM.  The spreadsheet was compiled from my records of the work performed by each employee of AAARM during that year.  A true and correct copy of such records are attached hereto as Exhibit  4.

Defendants argue that the spreadsheets reflect the number of persons employed by the week, not the number of persons who actually performed work during the week, and show the weeks when employees began and ended employment, not just the weeks they worked.  Defs.' Reply at 5-6.

The Mischeaux Declaration states that the spreadsheets show persons employed each week of 2001 and 2002, and states that this information was gathered from Mischeaux's records of work performed by each employee during the year.  The Declaration does not state that the weekly totals were based on the work performed by each employee during the week.  The Court need not decide this point, however, because the burden is on plaintiff, not defendants, to establish the jurisdictional minimum number of employees.  See FW/PBS, Inc., 493 U.S. at 231; Cameron, 211 F.Supp.2d at 1125.  Plaintiff's challenge to the method of compiling the spreadsheets does not provide any affirmative evidence to show that AAARM employed the requisite number of persons in the requisite

number of weeks. Plaintiff's bald assertion that each person listed on the spreadsheet should be considered an employee for the entire year is completely speculative and unsupported.[8]

Finally, plaintiff asserts that certain organizational charts prepared by AAARM for the Missouri Division of Family Services' licensing requirements show that AAARM had in excess of fifteen employees. See Pl.'s Ex. 6. The Court notes that the charts in plaintiff's Exhibit 6 are not authenticated, as they are not attached to a declaration or affidavit made on personal knowledge setting forth facts that would be admissible in evidence. As such, the charts could be properly disregarded. Even if the charts were considered, they do not provide sufficient evidence to meet plaintiff's burden to establish this Court's jurisdiction. Plaintiff states that eighteen individuals are listed on the organizational charts, and therefore AAARM had eighteen employees.[9] The charts are not evidence concerning when the individuals were allegedly employed by AAARM, or which weeks in 2001 AAARM had employment relationships with fifteen or more employees. See Walters, 519 U.S. at 206. Plaintiff's assertion is unsupported by evidence.

For the foregoing reasons, the Court finds that plaintiff has failed to meet his burden to establish the fifteen-employee minimum and subject matter jurisdiction under 42 U.S.C. § 2000e(b). See FW/PBS, Inc., 493 U.S. at 231. Plaintiff has done little more than raise speculation as to the accuracy of defendants' evidence. As a result, the Court finds that AAARM is not subject to Title

---

[8]Defendants' Exhibit C, for example, includes eight persons who are shown to have worked nine (9) or fewer weeks of the year 2001: Donald Reese, Sam Muhammed, Antanika Munir, William Johnson, DeAndre Harris Bey, Jesse Hatcher, Veronda Pierson and Calvin Wallace. Defendants' Exhibit D includes nine persons who are shown to have worked eight (8) or fewer weeks of the year 2002: Plaintiff Asim Ali, Azeem Muhammed, Joyce Favell, Jesse Hatcher, Chris Bibbs, Steve Mitchell, Derrick Mitchell, Akilah Mines and Chantel Muhammed.

[9]The Court notes that each of the three charts are attached to letters dated in mid-2001, and therefore could not be considered evidence of the number of AAARM's employees in 2002.

VII liability because it does not meet the fifteen-employee minimum of 42 U.S.C. § 2000e(b). Thus, the Court lacks subject matter jurisdiction over the putative Title VII claims.

**B. State Law Claims**.

Remaining in this action are eight counts based on state law. The Eighth Circuit has instructed that "federal courts should exercise judicial restraint and avoid state law issues wherever possible." Thomas v. Dickel, No. 213 F.3d 1023, 1026 (8th Cir. 2000) (internal citation and quotation omitted) (approving district court's decision to decline to exercise supplemental jurisdiction over state-law tort claims after it granted summary judgment on the federal claims). Plaintiff urges the Court to retain jurisdiction over his state law claims.

It is within the discretionary authority of this Court to decline to exercise supplemental jurisdiction over state law claims once it has dismissed "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see Reeve v. Oliver, 41 F.3d 381, 383 (8th Cir. 1994) (per curiam); McLaurin v. Prater, 30 F.3d 982, 984-85 (8th Cir. 1994). The Supreme Court has stated that if "the federal claims are dismissed before trial . . . the state claims should be dismissed as well." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). The Court will therefore decline to exercise supplemental jurisdiction over plaintiff's state law claims.[10]

---

[10]Plaintiff urges the Court to retain supplemental jurisdiction in his reply memorandum, but does not argue that diversity jurisdiction exists under 28 U.S.C. § 1322(a). The Court notes that plaintiff did assert the existence of diversity jurisdiction in the first and second amended complaints filed in March 2003 and October 2003. The Court concludes that it does not have diversity jurisdiction over this action because plaintiff was a citizen of the State of Missouri when the case was filed, and only subsequently moved to another state. See Complaint filed April 10, 2002. The existence of federal jurisdiction normally depends on facts that exist when the suit is filed, and therefore a person's domicile at the time of filing the complaint controls. See 15 J. Wm. Moore, et al., Moore's Federal Practice, § 102.16[2] (3d ed. 2003). "Subsequent events or changes in citizenship do not confer or destroy jurisdiction." Id. (citing, inter alia, Wolde-Meskel v. Vocational Instruction Project Community Servs, Inc., 166 F.3d 59, 62-63 (2d Cir. 1999)).

**Conclusion**.

For the foregoing reasons, the Court will grant defendants' motion to dismiss plaintiff's claims under Title VII in Counts I and II, for lack of subject matter jurisdiction. The Court will decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims in Counts III through X.

The Court wishes to express its appreciation to plaintiff's appointed counsel, Mr. Patrick T. McLaughlin, Mr. Francis X. Neuner, Jr., and Mr. Daniel D. Doyle, for their zealous and professional representation of plaintiff. The Court's appointment of counsel does not, of course, extend to any subsequent proceedings in state court.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss is **GRANTED**, for lack of subject matter jurisdiction. [Doc. 115]

**IT IS FURTHER ORDERED** that the remaining aspects of defendants' motion for summary judgment and to strike are **DENIED as moot**. [Doc. 115, 84]

**IT IS FURTHER ORDERED** that plaintiff's claims in Counts III through X of the Second Amended Complaint are **DISMISSED** without prejudice.

An appropriate order of dismissal will accompany this memorandum and order.

_/s/ Charles A. Shaw_
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  3rd  day of February, 2004.